[No. 19331-4-III. Division Three. December 18, 2001.]

THE STATE OF WASHINGTON, *Respondent*, v. EVERETT C. TREAT, *Appellant*.

*Philip E. Nino*, for appellant.

*Steven J. Tucker, Prosecuting Attorney*, and *Kevin M. Korsmo* and *Andrew J. Metts III, Deputies*, for respondent.

Sweeney, J. — We will impose a constructive arraignment date when a delay between charging and bringing a defendant before the court is both long and unnecessary. This is the *Striker* rule. *State v. Striker*, 87 Wn.2d 870, 557 P.2d 847 (1976). The requirements of *Striker* apply, however, only when a defendant is amenable to service. And a defendant is not amenable to service if the defendant is a resident of another state. Here, Everett Treat lived in Idaho, although he frequently worked in Washington. The question before us is whether his frequent sojourns into Washington are sufficient to invoke the mandatory constructive arraignment dates imposed by *Striker*. We conclude that they are not. We also conclude that the evidence amply supported his conviction for eluding a police officer. But, as the State concedes, there is no showing in this record that Mr. Treat knowingly, intelligently, and voluntarily waived his right to a jury trial. We therefore reverse and remand for a new trial.

## FACTS

Our factual summary is based on stipulated facts. Kootenai County sheriff's deputies pursued a white 1984 Datsun pickup in the Spokane Valley area on August 12, 1998. The deputies announced the pursuit over the radio along with the pickup's license number.

Spokane County Deputy Sheriff Randy Strzelecki learned of the chase over his radio and later met with a Kootenai County deputy sheriff who had been involved in the chase. Deputy Strzelecki, driving his marked sheriff's vehicle, subsequently saw a Datsun pickup matching the earlier description. He noted the license plate and the driver, and then turned around to stop the Datsun.

The Datsun "sped away" from Deputy Strzelecki. Clerk's Papers at 31. So the deputy activated his overhead lights and sirens and gave chase. The pickup eventually stopped after approximately one-quarter mile. Deputy Strzelecki and his passenger, Deputy Jeff Bergeron, got out and approached the Datsun. They ordered the driver to shut off the pickup and get out 8 to 10 times. The driver refused, but asked the deputies not to shoot him.

The Datsun then rolled toward the deputies three to four times before accelerating rapidly at a deputy. The deputy feared that he would be run over. The Datsun fled. The deputies shot out its tires. The pickup crashed and rolled over. The driver fled.

The deputies obtained a search warrant and searched the Datsun. They found Mr. Treat's Idaho identification card inside. The photo on the identification card matched the driver. Other items were found bearing Mr. Treat's name.

On November 1, 1999, the State filed a complaint in district court charging Mr. Treat with attempting to elude a police vehicle. On March 14, 2000, the State filed an information in superior court charging the same crime. On March 21, 2000, Mr. Treat was subsequently arraigned.

Mr. Treat objected to the timeliness of his arraignment, and later moved to dismiss based on violation of his speedy trial right. Mr. Treat stated he lived in Hayden Lake, Idaho, and worked in Post Falls, Idaho. But he testified he worked primarily in Washington. Mr. Treat's boss picked him up in the morning in Idaho, took him to the jobsite in Washington, and then returned him to Idaho at the end of the day.

The court found that Mr. Treat was not amenable to process because he was an Idaho resident. It denied his motion to dismiss and then convicted Mr. Treat on the stipulated facts.

SPEEDY TRIAL—AVAILABLE TO PROCESS

CrR 3.3 governs the time frame for bringing a criminal defendant before the court. *State v. Hudson*, 130 Wn.2d 48,

53, 921 P.2d 538 (1996); *State v. Stewart*, 130 Wn.2d 351, 358, 922 P.2d 1356 (1996); *State v. Lee*, 48 Wn. App. 322, 324, 738 P.2d 1081 (1987). The rule requires that defendants be brought to trial within either 60 days (if defendant is in custody) or 90 days (if defendant is not in custody) from the date of arraignment. CrR 3.3(c)(1).

A constructive arraignment date is imposed, however, when there is a delay that is both long and unnecessary between charging the defendant and bringing him before the court. *State v. Greenwood*, 120 Wn.2d 585, 591, 845 P.2d 971 (1993); *Striker*, 87 Wn.2d at 875. "If such a delay occurs, then the 90-day trial period is 'deemed' to commence 14 days after the information is filed." *Hudson*, 130 Wn.2d at 54 (citing *Greenwood*, 120 Wn.2d at 599). This is the *Striker* rule.

But the *Striker* rule is applicable only when the defendant is amenable to process. *Hudson*, 130 Wn.2d at 55; *Stewart*, 130 Wn.2d at 360; *State v. Jones*, 100 Wn. App. 820, 824-25, 998 P.2d 921 (2000); *State v. Monson*, 84 Wn. App. 703, 708, 929 P.2d 1186 (1997); *Lee*, 48 Wn. App. at 325. The question here is whether Mr. Treat was amenable to process if he lived in Idaho but frequently worked in Washington.

The defendant bears the burden of proving he or she was amenable to process. *Jones*, 100 Wn. App. at 825; *State v. Roman*, 94 Wn. App. 211, 216, 972 P.2d 511 (1999). A defendant is amenable to process when he or she is "liable or subject to the law." *State v. Carpenter*, 94 Wn.2d 690, 693, 619 P.2d 697 (1980); *Hudson*, 130 Wn.2d at 55; *Stewart*, 130 Wn.2d at 361; *Jones*, 100 Wn. App. at 825; *State v. Hunnel*, 52 Wn. App. 380, 383, 760 P.2d 947 (1988); *Lee*, 48 Wn. App. at 325.

A defendant who lives out of state, and is not in custody, is not amenable to process. And the *Striker* rule does not then apply. *Hudson*, 130 Wn.2d at 55-56 ("For purposes of CrR 3.3, an out-of-state defendant who is not in custody is not amenable to process in the usual sense of the

term."); *Stewart*, 130 Wn.2d at 361-62; *Jones*, 100 Wn. App. at 825; *Monson*, 84 Wn. App. at 710; *Hunnel*, 52 Wn. App. at 384; *Lee*, 48 Wn. App. at 325. This is true even when the State knows the defendant's whereabouts. *Stewart*, 130 Wn.2d at 361; *Lee*, 48 Wn. App. at 325. "If a person is not amenable to process, the State is not required to show due diligence in bringing the person before the court." *Jones*, 100 Wn. App. at 825.

*State v. Hunnel* is instructive. There, the defendant moved to Oregon in January 1985. *Hunnel*, 52 Wn. App. at 381. He then " 'travelled back and forth from Oregon to Washington from January of 1985 through approximately June 15, 1985 and thereafter resided within the state of Washington.' " *Id*. at 384 (quoting the trial court's finding). The court concluded Mr. Hunnel was not amenable to process between January and June 1985. He became subject to Washington law only after returning on June 15, 1985. *Id*.

A defendant living out of state does not become amenable to process because he frequently visits Washington. And no Washington case so holds. Maintaining this bright-line rule (out-of-state defendants who are not in custody are not amenable to process) avoids confusion and questions like: How many contacts with Washington will a defendant need before he or she is amenable to process? How long must the contacts be? Do only prearranged business visits count? Are social visits adequate?

Mr. Treat did not become amenable to process by merely visiting Washington.

The trial court correctly denied Mr. Treat's motion to dismiss based on CrR 3.3; as a resident of Idaho, he was not amenable to process. *Hudson*, 130 Wn.2d at 55; *Stewart*, 130 Wn.2d at 361-62; *Jones*, 100 Wn. App. at 825; *Monson*, 84 Wn. App. at 710; *Hunnel*, 52 Wn. App. at 384; *Lee*, 48 Wn. App. at 325.

SUFFICIENCY OF THE EVIDENCE

Mr. Treat next argues that the facts of his case did not satisfy the elements of the eluding.

■ The standard of review is whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt when viewing the evidence in a light most favorable to the State. *State v. Potts*, 93 Wn. App. 82, 86, 969 P.2d 494 (1998); *State v. Bridge*, 91 Wn. App. 98, 100, 955 P.2d 418 (1998). A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom. *State v. Walton*, 64 Wn. App. 410, 415, 824 P.2d 533 (1992).

■■ The elements of eluding are:

(1) a uniformed officer in a marked vehicle gives a signal to stop, (2) a driver willfully fails to stop, and (3) the driver exhibits a willful or wanton disregard for others in attempting to elude the police vehicle.

*State v. Hudson*, 85 Wn. App. 401, 403, 932 P.2d 714 (1997); *State v. Stayton*, 39 Wn. App. 46, 49, 691 P.2d 596 (1984). The purpose of the eluding statute is to prevent " 'unreasonable conduct in resisting law enforcement activities.' " *Hudson*, 85 Wn. App. at 403 (quoting *State v. Trowbridge*, 49 Wn. App. 360, 362, 742 P.2d 1254 (1987)).

■ The Spokane deputies were uniformed. And they signaled Mr. Treat to stop by using their overhead lights and sirens. The first element is then satisfied. *Hudson*, 85 Wn. App. at 403.

Mr. Treat sped down the road for approximately one-quarter mile before stopping. He then stopped briefly, accelerated at a deputy, and then attempted to once again drive away. Mr. Treat argues the facts are insufficient to establish that he willfully failed to stop. He claims that pulling over after one-quarter mile is reasonable. And his subsequent attempt to escape cannot be used to prove eluding because the deputies had already left their car.

■ First, Mr. Treat presents no evidence that he could

not stop sooner than one-quarter mile. Next, while the eluding statute requires that the defendant elude a "pursuing police vehicle," it does not require that the police vehicle remain moving at all times. RCW 46.61.024. Thus, Mr. Treat was attempting to elude a pursuing police vehicle even though it had stopped and the deputies got out. The second element of attempting to elude is satisfied. *Hudson*, 85 Wn. App. at 403.

▉ Finally, Mr. Treat argues that he was not wanton or willful. Wanton or willful does not require "that the defendant's driving endangered anyone else, or that a high probability of harm actually existed. Instead, the evidence need only establish that the defendant engaged in conduct from which a juror could infer wanton or willful disregard for the lives or property of others." *State v. Refuerzo*, 102 Wn. App. 341, 348-49, 7 P.3d 847 (2000); *State v. Whitcomb*, 51 Wn. App. 322, 327, 753 P.2d 565 (1988).

Mr. Treat attempted to speed away from the deputies after they signaled him to stop. He then accelerated his pickup at a deputy. Mr. Treat continued his flight from the deputies even after they shot out two of his tires. Indeed, Mr. Treat left the pickup only after he rolled it in his attempt to get away. The court's finding of wanton or willful disregard for the lives or property of others is then amply supported by this evidence. *Refuerzo*, 102 Wn. App. at 348-49; *Whitcomb*, 51 Wn. App. at 327. The third element of eluding is also satisfied. *Hudson*, 85 Wn. App. at 403.

The parties' stipulated facts support all the elements of eluding. *Id.*

JURY WAIVER

▉ ▉ The right to a jury trial is constitutional, and a waiver of a jury must be "knowingly, intelligently and voluntarily made." *State v. Bugai*, 30 Wn. App. 156, 157, 632 P.2d 917 (1981). The waiver must either be in writing, or done orally on the record. *State v. Wicke*, 91 Wn.2d 638, 645-46, 591 P.2d 452 (1979); *State v. Rangel*, 33 Wn. App.

774, 775-76, 657 P.2d 809 (1983). The State bears the burden of proving a valid waiver. *State v. Donahue*, 76 Wn. App. 695, 697, 887 P.2d 485 (1995).

 As the State concedes, there is no evidence in the record that Mr. Treat made a knowing, intelligent, and voluntary waiver of his right to a jury trial.

Thus, his conviction must be reversed and remanded for a new trial. *Wicke*, 91 Wn.2d at 645.

BROWN, A.C.J., and KATO, J., concur.