FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2015 MAY -4 AM 9: 30



# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 71291-8-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JOSHUA O'HARA CARGILL, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: May 4, 2015 |
| | ) | |

VERELLEN, A.C.J. — Evidence is sufficient to support a conviction for attempting to elude a pursuing police vehicle when, as here, after an initial brief stop, the defendant drove away upon being approached by the officer and told to turn off the vehicle and not to leave. Accordingly, we affirm.

## FACTS

On June 28, 2013, Joshua Cargill had two outstanding warrants for his arrest. On that day, an off-duty Arlington detective who was aware of the outstanding warrants saw Cargill at a Walmart store in Arlington. The detective called an on-duty officer, Officer Sargent, and advised him of Cargill's location and the outstanding warrants.

Sargent confirmed the two outstanding warrants and located Cargill driving eastbound on 172nd Street approaching the intersection of 51st Avenue. Cargill was traveling behind a large motor home. Sargent was traveling westbound and activated his emergency lights when he saw Cargill. Sargent made a U-turn and pulled in directly behind Cargill. The intersection light was red, and Cargill was stopped behind the motor

home. When the light turned green, Cargill turned right onto 51st and pulled off to the side.

Sargent pulled in behind Cargill and exited his car. He approached Cargill's car with his gun drawn. The driver side window was down and there was a woman in the front passenger seat. Sargent announced to Cargill that he was under arrest. Cargill responded, "No," and revved his car engine.[1] Sargent said, "Don't do it," meaning don't flee.[2] Sargent then said, "Turn your vehicle off and put your hands out of the window."[3] Cargill said, "Are going to shoot me? There's a kid in the back seat."[4] Once Sargent saw that there was a child approximately two or three years old in the back seat, he holstered his gun. Cargill then put the car into gear and drove off at a high rate of speed. Cargill drove southbound into the northbound lane of 51st Avenue. Traffic was very congested, and several cars had to drive off the road to avoid a collision. Cargill weaved in and out of the northbound and southbound lanes at a high rate of speed.

Sargent notified dispatch that Cargill had fled with passengers in the car and that he was driving recklessly southbound on 51st Avenue. Due to safety concerns, Sargent was advised to terminate a pursuit. Sargent then followed Cargill in his car at a safe speed and confirmed to other police units Cargill's direction of travel. Sargent also checked on motorists that had pulled over to avoid colliding with Cargill's car. Sargent eventually lost sight of Cargill and was unable to arrest him at that time.

---

[1] Report of Proceedings (RP) (Nov. 25, 2013) at 45.

[2] Id.

[3] Id.

[4] Id. at 46.

The State charged Cargill with one count of attempting to elude a pursuing police vehicle. Cargill moved to dismiss before trial and also at the close of the State's case for insufficient evidence, but the trial court denied the motions. The jury was instructed on the lesser included charge of failure to obey an officer, but found Cargill guilty as charged. The jury also found by special verdict that one or more persons was threatened with physical injury or harm by Cargill's actions during the commission of the crime, an aggravating factor. The court imposed a sentence of 29 months and 1 day of confinement.

Cargill appeals.[5]

## ANALYSIS

Cargill contends the evidence is insufficient to support his conviction because there was no evidence that he failed to stop when signaled to pull over or that he drove recklessly while being pursued by an officer. We disagree.

Evidence is sufficient to support a conviction if, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt.[6] "A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom."[7] "[A]ll reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant."[8] Circumstantial evidence and direct evidence are

---

[5] The State also filed a notice of cross appeal, but the State's briefing does not identify any assignments or error or provide argument on any cross appeal issues. Thus, we consider the cross appeal abandoned.

[6] State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).

[7] Id.

[8] Id.

3

deemed equally reliable.[9] We leave credibility determinations to the trier of fact and will not review them on appeal.[10]

"The purpose of the eluding statute is to prevent unreasonable conduct in resisting law enforcement activities."[11] To convict Cargill of the crime of attempting to elude, the State had to prove that "(1) a uniformed officer in a marked vehicle gives a signal to stop, (2) a driver willfully fails to stop, and (3) the driver exhibits a willful or wanton disregard for others in attempting to elude the police vehicle."[12]

Cargill contends that the State failed to prove that he failed or refused to immediately bring the vehicle to a stop because the undisputed evidence showed that he pulled over as soon as he was able. But the evidence also shows that as soon as the officer approached him, he revved his engine, distracted the officer by alerting him there was a child in the back, and drove off. He did so despite the officer's instruction to turn off the car and that he not flee. Viewing this evidence in the light most favorable to the State and drawing all reasonableness inferences against Cargill, this conduct showed that he willfully failed to stop when signaled by a uniformed officer to do so.

Similar evidence was held to be sufficient in State v. Treat.[13] There, the defendant stopped briefly after being signaled to pull over, but when the officers exited their vehicle and approached him, he accelerated toward one of the officers and then

---

[9] State v. Delmarter, 94 Wn.2d 634, 638, 618 P.2d 99 (1980).

[10] State v. Camarillo, 115 Wn.2d 60, 71, 794 P.2d 850 (1990).

[11] State v. Treat, 109 Wn. App. 419, 426, 35 P.3d 1192 (2001).

[12] State v. Hudson, 85 Wn. App. 401, 403, 932 P.2d 714 (1997); RCW 46.61.024.

[13] 109 Wn. App. 419, 426-27, 35 P.3d 1192 (2001).

drove away.[14] The court concluded that "Mr. Treat was attempting to elude a pursuing police vehicle even though it had stopped and the deputies got out."[15]

Cargill further contends that the State failed to prove that he drove recklessly while being pursued by a police car, noting that the officer conceded that he was instructed to terminate pursuit once Cargill drove off and that he simply followed Cargill. Cargill appears to concede that his driving thereafter was reckless and focuses instead on the lack of pursuit during the reckless driving.[16] But as the court recognized in Treat, "[W]hile the eluding statute requires that the defendant elude a 'pursuing police vehicle,' it does not require that the police vehicle remain moving at all times."[17]

As discussed above, Cargill was attempting to elude a pursuing police vehicle when he drove off after the officer told him he was under arrest, to turn off his car, and not to flee.[18] The evidence was sufficient to support the conviction.

Cargill next contends that he was denied a fair trial by the prosecutor's improper comments during closing argument. We disagree.

On a claim of prosecutorial misconduct, the defendant bears the burden of proving that the prosecutor's conduct was improper and prejudicial.[19] Where, as here, the defendant fails to object at trial, the defendant must show that the misconduct was

---

[14] Id. at 426.

[15] Id. at 427.

[16] "The only reckless driving in this case occurred when Mr. Cargill was not being pursued by a police car." Br. of Appellant at 8.

[17] 109 Wn. App. at 427.

[18] Additionally, when the officer got back in his car and continued to follow Cargill, he activated his emergency lights. Thus, even though from the officer's standpoint, he was technically not "in pursuit," a reasonable inference to be drawn was that Cargill understood the officer was signaling him to stop.

[19] State v. Emery, 174 Wn.2d 741, 756, 278 P.3d 653 (2012).

so flagrant and ill-intentioned that the resulting prejudice could not have been cured with a limiting instruction.[20] We determine the effect of any improper conduct by examining "'the context of the total argument, the issues in the case, the evidence addressed in the argument, and the instructions given to the jury.'"[21]

Cargill contends that the prosecutor misstated the evidence in a manner that prejudiced his case. Specifically, he contends that the prosecutor improperly speculated about his intent by arguing that Cargill knew he had warrants before he was stopped, that he only stopped so he could escape and avoid arrest when the officer got out of his car, and that he used the child in his car as a shield. We disagree.

Prosecutors are afforded wide latitude in making arguments to the jury and are permitted to draw reasonable inferences from the evidence.[22] The prosecutor's argument was a reasonable inference to be drawn from the evidence. From the moment he pulled over, Cargill's conduct evidenced such an intent: he kept the engine running after pulling over, revved the engine once the officer exited the police car and approached him, refused to turn off the car when ordered to do so, and replied, "No," when told not to leave.[23] When he saw the officer's gun drawn, he called attention to the child in the back seat of the car and, as soon as the officer holstered the gun, he drove off.

Cargill further contends that the prosecutor improperly appealed to the passion of the jury by using the phrase "path of destruction" to describe his flight from the officer,

---

[20] Id. at 760-61.

[21] State v. Monday, 171 Wn.2d 667, 675, 257 P.3d 551, 555 (2011) (quoting State v. McKenzie, 157 Wn.2d 44, 52, 134 P.3d 221 (2006)).

[22] State v. Anderson, 153 Wn. App. 417, 427-28, 220 P.3d 1273 (2009).

[23] RP (Nov. 25, 2013) at 45.

6

and by referring to the child in his car as "a baby."[24] Again, this was reasonable argument based on the evidence. Testimony at trial established that cars were split along the roadway, "hugging the ditch" after having to pull off to the side to avoid colliding with Cargill, literally creating a path for the fleeing vehicle.[25] Although no actual destruction occurred, the testimony described a situation where several cars were in danger of a head-on collision with Cargill in heavy traffic.

Cargill also fails to show that referring to the child as a baby was unduly prejudicial. While referring to a two- to three-year-old child as "a baby" is technically inaccurate, the actual age of the child was in evidence before the jury. In any event, Cargill fails to show that it is any less prejudicial to argue that he was endangering a toddler. Viewed in context, the prosecutor properly argued that there were other lives endangered by Cargill's conduct, including the child in the back seat. Cargill fails to demonstrate that the prosecutor committed prejudicial misconduct.

*Statement of Additional Grounds*

In a statement of additional grounds, Cargill raises claims of additional prosecutorial misconduct and ineffective assistance of counsel, both of which lack merit. He first contends that the prosecutor committed misconduct because during the officer's testimony and closing argument, the State used the term "reckless driving." But because Cargill did not object at trial and fails to show flagrant and ill-intentioned misconduct resulting in prejudice, the claim of prosecutorial misconduct fails. As noted

---

[24] Br. of Appellant at 16.

[25] RP (Nov. 25, 2013) at 48. The officer testified that he saw "[n]umerous cars splitting the road, having to drive off onto the shoulder to avoid [a] collision," and that the shoulder was very limited and bordered a ditch. Id. at 47.

above, the issue at trial was not the recklessness of the driving but whether he failed to stop and whether the police vehicle was pursuing him during the reckless driving.

Cargill further claims his attorney was ineffective by failing to object to the State's use of the term "reckless" and by failing to question the officer if the several cars pulled off the road was simply "a chain reaction" upon seeing other cars already pulled over rather than being caused by his driving.[26] Cargill fails to show that his attorney's performance was deficient and resulted in prejudice. As discussed above, Cargill fails to show any prejudicial effect of the State's use of the term "reckless," and counsel's choice to not ask a question that was based on speculation was legitimate trial strategy. Accordingly, his claim of ineffective assistance of counsel fails.

We affirm the judgment and sentence.

WE CONCUR:

Cox, J.

Becker, J.

---

[26] Statement of Additional Grounds at 3.